NETTIE S. JOHNSTON *vs.* NORRIS H. HUSSEY, Exor.

Lincoln.   Opinion November 3, 1898.

*Stat. Limitations.   New Promise.   Evidence.   R. S., c. 81, § 97.*

In *Johnston* v. *Hussey*, 89 Maine, 488, it was held that a certain letter written to the defendant by the plaintiff's husband, and subscribed also by the defendant's testator, was insufficient to remove the bar of the statute of limitations which had been pleaded. Upon a re-trial of the case, the plaintiff introduced oral testimony to "explain and elucidate the meaning of the language and words in the letter as used and understood by the parties," notwithstanding which the presiding justice ordered a nonsuit. *Held;* that this ruling is right. The new evidence relied upon afforded no aid in interpretation of the letter. It was really additional to the letter.

To remove the bar of the statute of limitations, the acknowledgment or promise must be express, in writing, and signed by the party chargeable thereby. The acknowledgment must be in the writing itself, and cannot be read into it by means of oral testimony. *Held;* that the words of the defendant's testator which are relied upon are not in the letter, nor are any words having an equivalent meaning. The court cannot write them in.

See *Johnston* v. *Hussey*, 89 Maine, 488.

ON EXCEPTIONS BY PLAINTIFF.

This action is now before the law court for the second time. The opinion in its former appearance is found in 89 Maine, 488. At that time the case showed that an action of assumpsit had been brought on an account annexed by Nettie S. Johnston against her father, Job Hussey,—against him personally, in his lifetime, his death occurring soon after,—and the action being now defended by his son and executor, Norris H. Hussey, who relies on the statute of limitations.   The writ is dated November 16, 1896.  The last item in the account is dated some seven or eight years prior, in June, 1879.   The plaintiff in the former argument of this case, relied upon a certain letter of considerable length, to be found in the former report at p. 490, signed by Wm. Johnston, the plaintiff's husband, to remove the statute bar, the letter having also at the bottom the names of Job Hussey, the original defendant, and

his wife. The court held that the letter not only did not contain an express acknowledgment of an existing liability, but did not acknowledge that Job Hussey ever was indebted to the plaintiff according to her declaration. The case then went back to the court at nisi prius, when, some time later, in October, 1897, the plaintiff's daughter, whose name appears as a witness to the signatures to the letter just referred to, offered her affidavit, which is a part of the case as it now appears, and as follows:

"To THE HONORABLE COURT, setting for the County of Lincoln, at Wiscasset, Me., I would most respectfully make a statement of facts within my knowledge concerning the letter offered before the Court, at the October term, 1895, signed by Wm. Johnston, Job Hussey, Ruth Hussey and Hattie M. Johnston, as a witness in the Nettie S. Johnston vs. Job Hussey case.

"In connection, herewith, will be offered the copy of a letter from "Noll" Hussey to his mother.

"The copy I believe to be correct, from my certain knowledge of the original letter, and in no essential does it differ.

"It startled and agitated my grandfather and grandmother in whose employ I was at that time. They declared that they were indebted to both my father Wm. Johnston, and to my step-mother Mrs. Nettie S. Johnston.

"They instructed me to invite my father and step-mother to come to their residence and upon their arrival at the house of my grandparents, I was told to show them the letter and, after it was read, Mr. and Mrs. Johnston disclaimed any such indebtedness, declaring, on the contrary, that Job Hussey was their debtor. My grandfather declared that no one of his children had aided him as had Mrs. Johnston.

"A settlement of all accounts was agreed to be necessary and the various claims of each party were considered; but, as I am informed that my father's claim has been finally adjusted, I shall say no more about that in my statement.

"Mrs. Nettie S. Johnston claimed there was due her on account, as per her book placed in evidence, certain sums of money,

advanced at different times, as stated in her letter, also for services rendered to my grandparents in their home during the period in which Mr. Wm. Johnston, his daughter, and infant· son boarded with them, from Nov. 12th, 1879, to Apr. 1st, 1881, and that they, Mr. and Mrs. Job Hussey, had agreed to pay for such service.

"These claims named, were admitted by Mr. Job Hussey, who declared both his willingness and ability to pay for it in these words: 'The place is good for it.' Having considered the several accounts, including that of money she had loaned them at different times, at the request of Job Hussey, her, (Nettie S. Johnston,) board and that of her child, her services to them and his indebtedness therefor to her at a moderate wage, Job Hussey instructed Wm. Johnston to write·Norris Hussey a letter detailing to him the particulars of the agreement of settlement and that when Wm. Johnston had written the letter to bring it to him for his signature.

"The letter was written by my father on the 4th day of February, 1886, he again, with his wife Nettie S. Johnston, visited my grandfather with the draft of the letter and several books of account for examination.

"It was at this time that Nettie S. Johnston made the proposition to her father, Job Hussey, to off-set any claim for wages due her, as before stated, if, upon his part, he would repay to her such sums of money as she had advanced to them, as stated in the letter, when she might demand the same, or upon his decease, that his executor should pay the same. His executor, Mr. Norris Hussey, my grandfather declared, was instructed by his will, to 'Pay my just debts.' The paper was formally signed. My father then asked my grandfather if he desired the letter witnessed and he said he did and asked me to witness their signatures and his statement which I did.

"As to other matter contained in the letter, I refer to its history, I do not think it would be necessary for me to repeat the statements I have already made before the courts.

HATTIE M. DRAKE.

COMMONWEALTH OF MASSACHUSETTS.

WORCESTER, SS.                    WEBSTER, OCT. 23rd, 1897.

Personally appeared the above named Hattie M. Drake and made oath to the truth of the above statements by her subscribed.

Before me,

FRANK E. DEON, Justice of the Peace."

[A COPY OF NORRIS HUSSEY'S LETTER TO HIS MOTHER.]

BOOTHBAY, Jan. 3rd, 1886.

"DEAR MOTHER:

Received Hattie's letter Friday. Was very glad to hear from you all. Mother, you said you would like some money. Don't you think "Will" would pay father for the horse or part of it so he could get along for a few weeks or has he paid it all up? I should like to know, as it don't seem, as though anyone pays him. They take his goods and that seems to be the end of it. If he can't pay him why not sell him to some one that can? I wish father would get some of him if he owes him as I am having a very poor trade, and have got to pay father's taxes soon, which is nearly $40.00. Please write me and let me know how matters stand between "Will" and father.          Your son, NOLL.

"Tell me all the bills that father has now owing him and the persons who owe him if you can.     . .

HATTIE M. DRAKE."

The presiding justice ruled that the evidence was insufficient to remove the limitation bar and ordered a nonsuit. To this ruling the plaintiff had exceptions.

*W. H. Hilton,* for plaintiff.

The statement signed by Job Hussey setting forth "how matters stand," explained and elucidated as it is by the affidavit of Mrs. Drake, showing what meaning was intended to be conveyed by this statement and in what sense the expression "how matters stand" was used, shows an express acknowledgment of an existing debt with a declaration of willingness to pay the same, clear and definite.

The instrument must operate according to the intention of the parties unless it be contrary to law. Where the meaning is doubtful, the circumstances at the making of the instrument and the subsequent acts of the parties are to be considered in determining the sense of the words. *Berridge* v. *Glassey*, 112 Pa. St. 442; *Patrick* v. *Grant*, 14 Maine, 233; *Tyler* v. *Fickett*, 73 Maine, 410; *Gallagher* v. *Black*, 44 Maine, 99; *Storer* v. *Ins. Co.*, 45 Maine, 175; 1 Am. & Eng. Ency. p. 533, note.

Mrs. Drake says that, "these claims named were admitted by Mr. Job Hussey, who declared both his willingness and ability to pay for it in these words: 'The place is good for it.'"

*O. D. Castner*, for defendant.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, SAVAGE, JJ.

SAVAGE, J. In *Johnston* v. *Hussey*, 89 Maine, 488, this court decided that the letter dated February 4, 1886, which was written to the defendant by the plaintiff's husband, and which was also subscribed by Job Hussey, the defendant's testator, was insufficient to remove the bar of the statute of limitations which had been pleaded. The court said: "We do not find in the letter any words indicating that the father promised to make a money payment for the services and supplies, or that he expressly acknowledged any liability therefor." Upon a re-trial of the case, the plaintiff, to remove the statute bar, introduced the same letter, and also introduced, without objection, the affidavit of Hattie M. Drake, who had been a witness to the signature of Job Hussey on the letter before referred to. The purpose of the introduction of the affidavit, as the case shows, was "to explain and elucidate the meaning of the language and words as used and understood by the parties in the statement of February 4, 1886." It is true that extrinsic evidence is admissible to explain words of doubtful or ambiguous meaning, or to disclose the circumstances surrounding the parties, or to apply language of description and designation to the parties and subjects intended. These are aids to interpreta-

tion. But the interpretation in the end must be of the writing itself. Nothing can be added to it nor incorporated within it. If the letter as written failed to show an express promise or acknowledgment, a promise or acknowledgment can not be read into it by means of oral testimony. It is claimed that the affidavit shows the intention of Job Hussey to acknowledge the debt sued. That can not help the plaintiff, if the letter fails to express that intention. There appears to be nothing in the letter which requires or admits extrinsic explanation or elucidation. There are no words of doubtful meaning. The situation and relation of the parties sufficiently appear. The affidavit affords no aid by way of explanation. It really seeks to add to the letter. The matter in the affidavit chiefly relied upon is the statement that Job Hussey declared, in connection with the writing of the letter, and with reference to the claim sued for: "The place is good for it." And the plaintiff claims that this expression was an acknowledgment of the claim, and of his willingness and ability to pay it, and that the letter should be interpreted in the light of this circumstance. If by any stretch of construction, the words could be interpreted as the plaintiff contends, still the fact remains that neither they, nor any words having an equivalent meaning, are in the letter; and we can not write them in. The statute is explicit. The acknowledgment or promise must be express, in writing, and signed by the party chargeable thereby. R. S., c. 81, § 97.

If we should give the effect claimed to the statements in the affidavit, we should thereby admit as evidence of the acknowledgment, matter not contained in the writing. We repeat the language of Mr. Justice EMERY in the former opinion: "The acknowledgment must be in writing—must be contained and found in the writing." "The writing signed by the father is alone to be searched for evidence of a promise." The ruling of the presiding justice that the evidence was insufficient to remove the bar of the statute, and the order of nonsuit, were both correct.

*Exceptions overruled.   Nonsuit confirmed.*